Kelly REXRODE, Appellant,

v.

Gregory BAZAR, Appellee.

No. 07–96–0121–CV.

Court of Appeals of Texas,
Amarillo.

Jan. 2, 1997.

Russell C. Daves, Lubbock, for appellant.

Jones, Flygare, Galey, Brown & Wharton, James L. Wharton, John D. Rosentreter, Lubbock, for appellee.

Before BOYD, C.J., REAVIS, J., and REYNOLDS, Senior Justice.*

BOYD, Chief Justice.

In one point of error, appellant Kelly Rexrode contends appellee Gregory Bazar (Bazar) was not entitled to the take-nothing summary judgment in his favor because the summary judgment evidence was not sufficient to establish his claims were barred under the collateral estoppel doctrine. Disagreeing, we affirm the judgment of the trial court.

### The First Suit

The question presented in this appeal requires a rather detailed review of a prior lawsuit involving these parties. On March 29, 1993, appellant filed suit against Bazar and State Farm Insurance Company (State Farm). In his suit, appellant complained that on or about October 13, 1992, he sustained bodily injuries and property damage

* Charles L. Reynolds, Chief Justice (Ret.), Seventh Court of Appeals, sitting by assignment. Tex. Gov't Code Ann. § 75.002(a)(1) (Vernon Supp. 1996).

proximately caused by Bazar's negligence and sought to recover against State Farm under the uninsured/underinsured motorist provision of his automobile insurance policy. State Farm was duly served with appellant's original petition and appellant's requests for admission on April 12, 1993. State Farm did not file any response to the requests for admissions causing them to be deemed admitted. Tex.R. Civ. P. 169(1).

When the case was called for trial on June 6, 1994, appellant non-suited Bazar, leaving State Farm as the only defendant. Following voir dire and opening statements, appellant was permitted to and did read several of the deemed admissions to the jury. However, State Farm moved to be allowed to answer the requests and that the deemed admissions be withdrawn. After a hearing outside the presence of the jury, the trial court found good cause to permit State Farm to answer the requests and withdrew the deemed admissions from the consideration of the jury. Appellant then rested without making any further attempt to produce evidence.

Subsequently, the trial court granted State Farm's motion for instructed verdict and rendered judgment that appellant "take nothing by his suit against State Farm Mutual Automobile Insurance Company...." The trial court's withdrawal of the admissions was later affirmed by this court in an unpublished opinion, styled *Kelly Rexrode v. State Farm Mutual Automobile Insurance Company,* 07–94–0297–CV (Tex.App.—Amarillo 1995, writ denied).

### The Second Suit

On June 7, 1994, appellant filed the instant suit against Bazar, making the same allegations of negligence, proximate cause, and harm to him. In his original answer and a subsequent motion for summary judgment, Bazar asserted that appellant was collaterally estopped to assert any claim against him because appellant "completely litigated issues concerning negligence, proximate cause, and damages arising out of the accident made the subject matter of this lawsuit in a previous case...." Without specifying its reasoning,

the trial court granted the take-nothing summary judgment giving rise to this appeal.

### The Law

The standards for appellate review of a summary judgment are now axiomatic. As explicated by our supreme court they are:

1. The movant for summary judgment has the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law.

2. In deciding whether there is a disputed material fact issue precluding summary judgment, evidence favorable to the non-movant will be taken as true.

3. Every reasonable inference must be indulged in favor of the non-movant and any doubts resolved in its favor.

*Nixon v. Mr. Property Management Co.,* 690 S.W.2d 546, 548–49 (Tex.1985).

In order for a defendant to be entitled to summary judgment, he must disprove, as a matter of law, at least one of the essential elements of each of the plaintiff's causes of action, *Lear Siegler, Inc. v. Perez,* 819 S.W.2d 470, 471 (Tex.1991), or must establish one or more defenses as a matter of law. *Bryant v. Gulf Oil Corp.,* 694 S.W.2d 443, 445 (Tex.App.—Amarillo 1985, writ ref'd n.r.e.). In supporting his judgment, Bazar asserted that the summary judgment evidence established he was entitled to the affirmative defense of collateral estoppel.

■ The doctrine of collateral estoppel is designed to promote judicial efficiency, protect parties from multiple lawsuits, and prevent inconsistent judgments by precluding the relitigation of any ultimate issue of fact actually litigated and essential to the judgment in a prior suit. *Sysco Food Servs., Inc. v. Trapnell,* 890 S.W.2d 796, 801 (Tex.1994); *Tarter v. Metropolitan Sav. & Loan Ass'n,* 744 S.W.2d 926, 927 (Tex.1988).

In *Van Dyke v. Boswell, O'Toole, Davis & Pickering,* 697 S.W.2d 381 (Tex.1985), the supreme court held that, unlike the broader res judicata doctrine, collateral estoppel analysis does not focus on what could have been litigated, but what was actually litigated. *Id.* at 384. Even so, some three years later in the *Tarter* case, even after reiterating that

collateral estoppel precludes relitigation of issues "actually litigated and essential to the judgment in a prior suit," by citing *Bonniwell v. Beech Aircraft Corp.*, 663 S.W.2d 816, 818 (Tex.1984) for the proposition that the collateral estoppel doctrine applies when the party against whom it is asserted "had a full and fair opportunity to litigate the issue in the prior suit," the court seemed to indicate that the *opportunity* to litigate an issue was sufficient to support collateral estoppel. *See Tarter*, 744 S.W.2d at 927. However, that choice of language was unfortunate because in *Bonniwell* the court expressly defined collateral estoppel as narrower than res judicata, and stated that it "bars relitigation of any ultimate issue of fact *actually* litigated," while res judicata bars litigation "of all issues connected with a cause of action or defense which, with the use of diligence, *might have been tried* in the prior suit." 663 S.W.2d at 818 (emphasis added).

More recently, in *Mower v. Boyer*, 811 S.W.2d 560 (Tex.1991), the supreme court held that a prior adjudication of an issue will be given estoppel effect only if it was "adequately deliberated and firm." *Id.* at 563. The *Mower* court then went on and instructed that the factors it considers in making this determination are 1) whether the parties were fully heard, 2) whether the court supported its decision with a reasoned opinion, and 3) whether the decision was subject to appeal or was in fact reviewed on appeal. *Id.* at 562. In view of this recent supreme court authority, we believe any confusion has been obviated and we adhere to the "actually litigated" criteria explicated in *Van Dyke v. Boswell*.

■ Thus, a party seeking to assert the bar of collateral estoppel must establish that 1) the facts sought to be litigated in the second suit were fully and fairly litigated in the first action, 2) those facts were essential to the first judgment, and 3) the parties were cast as adversaries in that first suit. *Sysco Food*, 890 S.W.2d at 801. For the doctrine to ° be invoked it is also necessary that the party against whom the plea is being asserted be a party or in privity with a party in the prior litigation. *Id.* at 802; *Mower*, 811 S.W.2d at 563.

Our initial determination must be whether there was full and fair litigation of the same fact issues in the first suit. *Thomas v. Thomas*, 902 S.W.2d 621, 625 (Tex.App.—Austin 1995, writ denied), *citing Cole v. G.O. Assocs., Ltd.*, 847 S.W.2d 429, 431 (Tex. App.—Fort Worth 1993, writ denied). Appellant concedes in his brief that "the central issues in this (second) case are whether or not Gregory Bazar was negligent and whether such negligence proximately caused damages to (appellant)." However, his primary contention on appeal is that in the first suit against State Farm, neither issue was "actually litigated" as is necessary to invoke the collateral estoppel doctrine. We disagree.

■ For the purposes of collateral estoppel, an issue was "actually litigated" when it was properly raised, by the pleadings or otherwise, and it was submitted for determination, and determined. *Van Dyke*, 697 S.W.2d at 384, *citing Restatement (Second) of Judgments* § 27 cmt. d (1982).

### Issue Properly Raised

In the original petition filed in the first suit, appellant alleged that his bodily injuries and property damage were the direct and proximate result of Bazar's negligence in operating his motor vehicle in Lubbock County. He also alleged that prior to that time, he had purchased an uninsured/underinsured motorist policy from State Farm with coverage "in the amount of $20,000 per person," and that Bazar had been operating an uninsured/underinsured vehicle. Appellant then alleged that he had complied with all conditions precedent to recovering under this policy, but State Farm refused to pay, thereby causing his damages. We find that the question of Bazar's negligence was properly raised by the pleadings in the first suit.

### Issue Submitted for Determination and Determined

In the first lawsuit, Rexrode non-suited his claims against Bazar before the jury was selected, sworn and seated, and before opening statements were given. Subsequently, after the jury was seated and sworn, as we have noted, Rexrode offered only requests

for admissions, with the comment "deemed admitted" after he read each request, as proof in support of his case against State Farm. The requests for admissions read by the attorney included:

1. Appellant suffered bodily injury damages in the automobile accident on October 13, 1992, in the amount of $100,000.

2. The location of the accident (the intersection of County Road 71 and County Road 15, in Lubbock, Lubbock County, Texas).

3. The automobile accident was proximately caused by Bazar's negligence.

4. Nothing appellant did or failed to do on October 13, 1992 caused or contributed to the accident.

5. When the accident occurred, Bazar was driving his car at a rate of speed in excess of that which a person of ordinary prudence or ordinary care would have driven under the same or similar circumstances.

6. The excessive speed in those circumstances was a proximate cause of the accident.

7. At the time of the accident, Bazar failed to timely apply the brakes to avoid the collision.

8. Bazar's failure to timely apply the brakes to avoid the collision was a proximate cause of the accident.

9. At the time of the accident, Bazar failed to timely bring his car to a stop in time to avoid the collision.

10. Bazar's failure to timely bring his car to a stop in time to avoid the collision was a proximate cause of the accident.

11. At the time of the accident, Bazar failed to maintain such a lookout as a person of ordinary prudence would have maintained under same or similar circumstances.

12. Bazar's failure to maintain such a lookout was a proximate cause of the accident.

13. At the time of the accident, Bazar failed to apply the brakes of his car in order to avoid the collision.

14. Bazar's failure to apply the brakes to avoid the collision was a proximate cause of the accident.

15. At the time of the accident, Bazar failed to yield the right of way to appellant's vehicle, when a person of ordinary prudence would have done so under the same or similar circumstances.

16. Bazar's failure to yield the right of way to appellant's car was a proximate cause of the accident.

After reading these admissions in front of the jury, appellant's attorney paused to ask the trial judge whether he could offer requests for admission numbers 21, 22, 23, 24 and 27, which dealt with the matter of insurance coverage, as well, as reading them could cause him to violate a motion in limine. It was at that point that the attorney representing State Farm sought leave of the trial court to respond to the requests for admission. The jury was then recessed and the court proceeded to hear State Farm's motion.

As a result of the hearing, the trial court found good cause to allow State Farm to answer the requests, and ruled that appellant could not read the admissions regarding insurance coverage and failure to pay to the jury. After appellant's attorney perfected a bill on these issues, the jury was brought back into the courtroom, at which point appellant stated, "Rest, your Honor." Subsequent to this announcement, State Farm was granted a 15–minute recess to prepare the responses to the requests for admission. The trial court then withdrew the deemed admissions from the consideration of the jury and file-marked the responses.

State Farm then non-suited Bazar from its cross-claim against him and moved for an instructed verdict, because there was no evidence upon which a jury could "quantify damages and make a determination with respect to liability in this particular case." Again, as we have noted, the trial court granted that motion and rendered the judgment giving rise to this appeal.

■ It is established that when one or more parties are entitled to a verdict as a matter of law based upon the evidence, or lack thereof, produced upon trial before the

jury,[1] the court, either on its own motion or upon motion, may instruct the jury as to the verdict it must return, or withdraw the case from the jury and render judgment. *Connell v. Connell,* 889 S.W.2d 534, 539 (Tex.App.— San Antonio 1994, writ denied), *citing* 4 R. McDonald, Texas Civil Practice § 21:52 (1992). Thus, an instructed verdict is proper when there is no evidence, or when the evidence has no probative value or force, and when delivered, an instructed verdict is a final, appealable judgment on the merits, capable of precluding relitigation of the same claim (res judicata) or issue (collateral estoppel).

Likewise, in *Mendez v. Haynes Brinkley & Co.,* 705 S.W.2d 242 (Tex.App.—San Antonio 1986, writ ref'd n.r.e.), the court held that findings in a default judgment can be given collateral estoppel effect. There, the default judgment included a finding that an insurance agent had no authority to act for an insurance company in issuing a policy covering an apartment house. These findings were sufficient to collaterally estop the apartment house owners from contending otherwise in a later suit against the insurance company. *Id.* at 245.

■ In contrast to the cases in which a judgment has been rendered, a non-suit is a termination of the pleaded causes of action and asserted defenses without an adjudication of their merits that returns the litigants to the positions they occupied before the plaintiff invoked the court's jurisdiction. *Molinar v. Plains Ins. Co.,* 660 S.W.2d 845, 849 (Tex.App.—Amarillo 1983, no writ). That being so, the taking of a voluntary non-suit does not constitute litigation of the issues in a case and does not prejudice the parties against seeking the same relief in a subsequent lawsuit. *Ashpole v. Millard,* 778 S.W.2d 169, 171 (Tex.App.—Houston [1st Dist.] 1989, no writ); *In re T.N.V.,* 855 S.W.2d 102, 103 (Tex.App.—Corpus Christi 1993, no writ).

With regard to the right to take a non-suit, Tex.R. Civ. P. 162 provides:

At any time before the plaintiff has introduced all of his evidence other than rebuttal evidence, the plaintiff may dismiss a case, or take a non-suit, which shall be entered in the minutes. Notice of the dismissal or non-suit shall be served in accordance with Rule 21a on any party who has answered or has been served with process without necessity of court order.

*See also Hyundai Motor Co. v. Alvarado,* 892 S.W.2d 853, 854 (Tex.1995).

■ A plaintiff's right to this sort of dismissal is unqualified and absolute as long as a defendant has not made a claim for affirmative relief. *KT Bolt Manuf. Co. v. Texas Elec. Coop., Inc.,* 837 S.W.2d 273, 275 (Tex. App.—Beaumont 1992, writ denied).

■ Rule 162 was designed to allow a plaintiff to avoid unexpected emergencies, like the one encountered by appellant when the trial judge withdrew the deemed admissions over his objection, without the dire consequences of having a judgment returned against him. *See Hoodless v. Winter,* 80 Tex. 638, 16 S.W. 427 (1891); 5 R. McDonald, Texas Civil Practice § 27:39 (John S. Covell ed., 1992).

In *Orion Invs. v. Dunaway and Assocs., Inc.,* 760 S.W.2d 371 (Tex.App.—Fort Worth 1988, writ denied), the court was presented with a situation analogous to the one before us. In that case, Dunaway and Associates (Dunaway) had filed suit against Orion Investments, Inc. (Orion) and several other defendants. Orion served requests for admission and other discovery on Dunaway, who failed to object to or timely answer the discovery. When his request for an extension of time to answer them was denied by Orion's attorney, Dunaway filed a motion to withdraw the deemed facts and obtained a hearing date on that motion. However, three days after filing the motion, and prior to the hearing date, Dunaway filed a notice of non-suit in the first suit, and concomitantly filed a second lawsuit[2] against Orion and

---

**1.** In *Qantel Business Sys. v. Custom Controls Co.,* 761 S.W.2d 302 (Tex.1988), the court noted that "when a plaintiff rests, he indicates that he does not desire to put on further evidence, except by rebuttal testimony, and that he has fully developed his case." *Id.* at 304.

**2.** The cause of action in the second suit was substantially the same as the one in the first suit.

other defendants. The trial court granted the non-suit in the first case. When Orion learned of the non-suit, it filed a "motion for new trial or in the alternative motion to reinstate or in the alternative motion to set aside notice of non-suit and order for non-suit." *Id.* at 372. From a denial of its motion, Orion appealed.

In its appeal, Orion asserted seven points of error, including a point that Dunaway was not in good faith because the non-suit was an effort to avoid the deemed admissions, and the non-suit was merely a way to circumvent the deemed admissions. In its opinion affirming the lower court, the appellate court discussed that question and held that Dunaway was not in bad faith when it exercised its "well-established" right to take a non-suit when "the case has become difficult." *Id.* at 373–74.

■■■ Under the circumstances in this case, when the trial court allowed State Farm to withdraw the admissions and answer them, appellant was also faced with a difficult situation and had the option to non-suit, thereby protecting his right to re-file. However, he did not do so, and when he "rested," allowed State Farm to make its successful motion for an instructed verdict. By resting instead of seeking a non-suit, appellant failed to prevent the issue of Bazar's negligence from being submitted for determination and determined adversely to him. That being so, the issue was "actually litigated" in the first suit.

■■■ We must next address the second element of collateral estoppel, *i.e.,* whether Bazar's negligence was an essential part of the take-nothing judgment in the first case. With respect to uninsured/underinsured motorist coverage, State Farm's insurance policy provided:

> We will pay damages which a *covered person* is legally entitled to recover from the owner or operator of an *uninsured motor vehicle* because of bodily injury sustained by a *covered person, or property damage,* caused by an accident. (emphasis in original).

■■■ The phrase "legally entitled to recover" has been held to mean that "an in-

sured must be able to show fault on the part of the uninsured motorist and the extent of the resulting damages ...." *Franco v. Allstate Ins. Co.,* 505 S.W.2d 789, 792 (Tex. 1974); *United Services Auto. Assoc. v. Blakemore,* 782 S.W.2d 277 (Tex.App.—Waco 1989, writ denied).

It readily appears that the question of Bazar's negligence or lack thereof was inextricably intertwined with the question of State Farm's liability to appellant in the first lawsuit. Thus, a finding that Bazar was not liable was essential to the judgment in the first lawsuit.

It is also obvious that the parties were adversaries in the first lawsuit. In order to establish State Farm's liability, appellant must not only have established that Bazar's negligence was the proximate cause of his damages, but also that the insurance company was obligated to pay but had wrongfully refused to so do. Thus, the third element of collateral estoppel is also met.

The last requirement for the application of the collateral estoppel doctrine is that the party against whom the plea of collateral estoppel is being asserted be a party or in privity with a party in the prior litigation. *See Benson v. Wanda Petroleum Co.,* 468 S.W.2d 361 (Tex.1971). Appellant was the plaintiff in the first lawsuit, and is the plaintiff in the instant lawsuit. The requirement of "party or in privity" is clearly met in this case.

In summary, all the requirements for invocation of the doctrine of issue preclusion by collateral estoppel were sufficiently shown by the summary judgment evidence. Accordingly, appellant's point of error is overruled, and the judgment of the trial court affirmed.